Oral argument not to exceed 15 minutes per side. Andrew McGinnis, for the appellant, you may proceed. Thank you. May it please the Court, Andrew McGinnis? Have you reserved time with the clerk for rebuttal? I have. I've asked for two minutes of rebuttal time. Thank you, Judge. That's fine. Proceed. There are several errors that we're asking this Court to review of the District Court's dismissal on a 12B6 motion of our complaint. But the overarching error and the key one, in our view, is the District Court's misconstruction of the disputed contract terms. I brought with me a chart today to help walk through some of the reasons why, in our view, he construed that the wrong way. First, the most obvious... Let me ask if the appellee... Can you all see the chart? We cannot. However, we have copies in the record. Thank you. Thank you, Judge. Counsel, this is Judge Donnell. I had one question before you started. You said that the judge misconstrued the contract or construed it the wrong way. In that sense, are you using misconstruction and ambiguity the same way? If he misconstrued it, is it because it was ambiguous or you claim that it's not ambiguous, it was just a misconstruction? We claim that it's not ambiguous and it's a misconstruction. But either way, Judge Donnell, whether we're correct on our interpretation or the Court concludes, notwithstanding my argument that it's ambiguous, you need to reverse the District Court because he held as a matter of law that it supported UPS's position and dismissed the case on that basis. Thank you, Counsel. Now, the first... And, Judge, I wish you were here to... Judge Donnell, I wish you were here to see the chart, but perhaps you can refer to our motion for leave to bring this chart in. What I've done is blow up the terms that are the disputed terms in this case. I don't think there's any dispute about any other part of the service guide. This is record number one, page ID number 137. This is one of two places in the service guide where this identical language appears. This is for domestic shipments. On page 203 of record one is the identical language for international shipments. So I want to walk through this. But our first argument, and I'll try to keep you in my field of projection, Judge Donnell, is that on the top line of numbers under package, there's a hash mark in the far left column, $0 to $100, the fee is $0. That couldn't be more clear in our view. The second reason we think the district court got it wrong is that in the second hash mark, the second portion of this table that I've blown up here, it has a range from $100 and a penny to $50,000. And that range is indicated by a little hash mark, a little hyphen between those two numbers that I just mentioned. We believe that because that in the same text, same part of the table, the pricing table, and this is the only place in the entire contract terms and service guide where this issue is addressed, it qualifies the portion of the table that the district court took out of context in our view, and that's the words of the total value declared. So our view is that because of that range, that indicates that that's what the $0.85 is supposed to go to. My third argument is, and this is indicated by the page of the service guide where this table appears, it is an indication, a pricing table for value-added services. Well, how is it a value-added service? If you've already got the first $100 of coverage to then go back and charge again for it. So the only value added when you declare excess value is to get additional coverage. So we think the words value-added service themselves indicate that you're supposed to be getting something extra. Counsel, if somebody declared a value of $250, would it not be and paid the minimum charge of $255? Would it not be clear with very simple computation that the value from $0 to $100 was accounted for in that minimum charge of $255? Isn't that so? I'm trying to understand your question, Judge. Just give me a second. But my understanding of the $255. Well, the increment from $0 to $100, from $100 to $200, and then from $200 to $300, $250 being between $200 and $300, you multiply 3 by $0.85, you come up with the $255, do you not? And hence it would be clear that that initial value from $0 to $100 would be accounted for in that minimum charge. I have to disagree, Judge, and here is my rationale, and I was about to get to this part of my argument. I view the $255 as an administrative fee to account for as a minimum charge for the point of tracking this excess declared value. My argument exactly is the opposite. The baseline rate, the amount that's already being charged, even if you don't declare any extra value, already includes the first $100 of loss. So the coverage is already in a different charge. It's in the base rate. So how can it be in the $255? That's my whole point. And I'll get to that from a page of their brief on appeal. And in their brief on page 3 in their statement of the case, they refer to the Carmack Amendment as a background for this whole thing. That's a federal statute, 49 U.S.C. 14706C1A. Here's the quote from their brief, and it has a quote within it. The statute also permits carriers to, quote, establish rates for the transportation of property, dot, dot, dot, this is from their brief, under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement. And it goes on. The key here is the established rate. So what they're saying is the Carmack Amendment allows them to declare a reasonable value, here $100, and to establish a rate that includes coverage for that amount. So the point is this. If the coverage is already in that base rate, it's counterintuitive to anybody looking at this to say you're going to go back and charge again for the coverage you already have. And that's from their brief. You already have or you've already paid for. You pay for it in the base rate. You don't have it until you pay for the shipment, but you have it because the Carmack Amendment says they can put it right in their base rate. That's what it's all about. So you've already paid. And so asking for somebody to read this table and to think that you're going to go back now if you declare more and pay a second time for the coverage you already have is counterintuitive. And when something is counterintuitive, it means it's not being construed reasonably. Counsel, why are you somewhat reluctant to acknowledge the ambiguity position? I mean, ambiguity serves you well. It allows you to survive a motion to dismiss. I don't know why you seem somewhat reluctant to focus on ambiguity when it would advance your position. Well, I'll address that in my very next argument, Judge Lopez. And I think that there's a phrase that economists use, and I hate to bring them up sometimes, called a natural experiment. There's a perfect case for the natural experiment. When I clerked on the Court of Appeals back in the late 80s for Judge Coffin, active judges had three assigned law clerks. Nowadays, I'm given to believe they have four. So among the chambers of the three judges on this panel, you have 10 or 15 people, including your administrative assistants, that you could posit the following hypothetical. For a $350 charge, a declared value, what is the coverage charge? We've done this many times, and people invariably, in my experience, come back with $255. That's how they come up with it. Yet UPS is charging $3.40. If that's how people are reading it, I think it's clear that we prevail on the contract language. Obviously, the fallback position is if you think we both have a reasonable position, it's got to be declared ambiguous, and it has to go back. But why would I argue for ambiguity when I think we win on the contract is the short answer to your question, Judge. Well, just pursuing the ambiguity issue a little further, whose perspective should we adopt here? Is it an unsophisticated person just walking in off the street to ship a UPS package and declare a value, or is it the large-scale shipper who has auditors to review these charges? Because we often talk in these cases about how would the reasonable individual perceive the language at issue. I mean, whose perspective are we supposed to use here? That's an excellent question, and I believe it's not the least sophisticated consumer. That would be applicable in a federal Fair Debt Collection Practice Act case or something of that nature. This Court has established that standard. But certainly a reasonable consumer. It's not just lawyers. It's not just sophisticated shippers. In fact, if you're Amazon, you probably have gotten rid of the service guide and negotiated your own contract. So we're not even talking about that. But certainly in our complaint in this case, we allege that UPS requires its franchisees, its third-party retailers, et cetera, to publish this guide and make it available, and they made it available online. So the facts are, as we've alleged from their SEC filings, that they have over 1 million customers per day. They have, in 2012 I think they shipped, according to them, over 4 billion packages. This language has to be a reasonable consumer. It can't be just a sophisticated buyer of services. Could you turn to, if you've completed your ambiguity or contract claim, could you turn and address the federal transportation statute claim under 13708B? Absolutely, Your Honor. This is a statute that the district court misconstrued as an off-discount billing issue. But that was the 13708A claim that was in this companion case, CIVAC, that you've heard about. We dropped that claim from this case. This is known colloquially as a Truth in Billing Act claim. The problem, I'm struggling with the requirement that there is a person that caused the motor carrier to publish the false or misleading. How can you be both? The reason you could, well, first of all, as a matter of definition, as the grocery hauler's case held, and we believe correctly, you can be both under the statutorily defined term of person and carrier. But to the point that I think you're raising, Judge Strach. But didn't grocery haulers say that the defendant cannot cause itself? I mean, you may fall within the statute, but that the defendant cannot cause itself to present false or misleading information. In that case, they had a different case. Here we have alleged in this complaint that UPS has this franchise network. It has these third-party retailers. They caused those third-party retailers to publish this service guide. So what they've done by that obligation is they've caused a third person, who they say is a third person, to create the false billing. We believe under principles of respondeat superior and other principles, they can be held accountable for having caused the very confusion through a third party. So you fall within the statute that way. But didn't you say that when you look at the large retailers, that those individuals are sophisticated and negotiate their own agreements? And as Judge Lopez, I think, said in his question, they've got audits and all of that. So if that's the case, and they negotiate their particular service rates, how can they be alleged to have caused this confusion? If there's a direct relationship between negotiation between UPS and a mass shipper, I would agree with you, Judge Donald. There's no third party involved, and we would have a problem on this particular claim. But in all likelihood, and we haven't taken any discovery in this case, obviously. And I'm sort of assuming that there's that negotiation, which I can't represent to this court, is in fact the case. We believe that they would not be within this service guide in the first place, so they wouldn't be part of our class. Because we're obviously hanging our hat on the service guide. I see that I'm out of time. Let me ask you one clarifying question. So the relationship that you're speaking to is... No, let me back up. I'm trying to understand the tiers of relationships. You have UPS, Inc., causing UPS third party entities. We have UPS as a Delaware corporation, parent of UPS Services, Inc., who's the defendant in this case. There's another entity, I believe, from the SEC filings, that heads up the franchising operation. So let's... Ms. Blythe will correct me, but let's just call them UPS Franchise, Inc. They cause... So that other entity in UPS causes their franchisers, requires them to publish these, what we consider to be false and misleading pricing tables. And that's your third party. And then we go, we're not suing the third party retailers, but we're suing UPS and saying you're responsible for causing those third parties to publish those false and misleading guides. Council, I gather, in part, it's your position that it's... Because the application of the federal transportation statute depends on more complete understanding of the interrelationship among all these parties, the state of the record would not really permit a conclusion that that statute does not apply here. Absolutely correct. And in the grocery hauler's case, that was a summary judgment motion. Your Honors, I haven't been able to address the preemption argument. Can I have a second on that, or shall I... Briefly do that. I would. And I want to point out, Judge, because this case was filed, was handed down just a few weeks ago, and Your Honor was on the panel, Merritt v. Diego, American Supply, Sixth Circuit Numbers 14-6198, November 2nd, 2015. Judges Seiler, Rogers, and yourself, Judge Strach. And on page 12 of that, there's a strong presumption against federal preemption of state law. I just want to make that point because it's a new brief. But in essence, they argue that because of the Willans case, we're preempted because they construe Willans to mean one thing. You can only have a run-of-the-mill breach of contract case. We know that's not the law, and the reason we know that's not the law is, first of all, that's not what Willans says. But second of all, in the Northwest Inc. case versus Ginsburg in 2014, that issue was presented, and Judge Alito, writing for the court, said, in that case, it was an implied contract claim, but it was not an expressed contract claim. Same argument was made, and to paraphrase Judge Alito, he says, for the court, federal preemption in this area doesn't doom or save any of these claims. You have to look at them on a case-by-case basis. As UPS has pointed out in their brief, as I have pointed out in our brief, as we did below, we're hanging our hat on our construction of this contract. If UPS was correct to charge the extra 85 cents, there's no unjust enrichment because there's nothing wrong about collecting 85 cents you're entitled to under the contract. So because we're not asking them to do anything other than to stand up for their voluntarily assumed obligation, this case is not preempted on the unjust enrichment claim. Thank you very much, Your Honors. Thank you. Thank you. Good morning. Caitlin Blythe for UPS. Every argument advanced by the plaintiff's appellants makes the same fundamental wrong turn because every argument disregards the word total and the phrase total value declared. Total has a purpose, and it's a word that would be clear even to any reasonable consumer. Isn't the question our standard of review? You're on a 12B6 motion, so your opposing counsel does not have to prove that his is, even though he alleges it, that his is the only reasonable interpretation. The question is, is his also a reasonable interpretation? Isn't that correct? That's the question. But the answer is that plaintiff's interpretation is not a reasonable one because it's flatly inconsistent with the terms of the contract. Now, the only way to read total value declared to mean something less, to mean it's limited to that range, to the portion of declared value above $100, is to add words to change the meaning, such as to the value declared. Under that argument, in order to make the fee chart work, wouldn't you have to change words to say at the beginning hyphen, rather than $100 and a penny, wouldn't it have to say $0 to $50? And then the rest of the hyphenated fee structure would work. It seems to me that both of you have to add language in order to come up with the assurance of how you interpret the contract. No, and the reason is because we have to apply basic rules of contract interpretation, like plain and ordinary meaning. Plain and ordinary meaning of total value declared means the entire value declared. That word has a purpose, and it would not be there if not to emphasize that the declared value charge applies to the value a shipper declares in its entirety. That application of total value declared isn't even triggered until you are in the range of $100, one cent, up to $50,000. That language seems to be really simply a triggering mechanism. Well, I shouldn't say certainly, but arguably it suggests that the value range from $0 to $100 plays no role in the determination of how much has to be paid to get the coverage that the consumer wants. So if you read the two rows together, which we must, the triggering mechanism is actually the value declared, the amount the shipper declares as value. What the first row says to the shipper is if you don't declare value above $100, then there's no charge. But if you do, the second row says once you declare value above $100, up to the $50,000 per package maximum, the declared value charge applies, and it applies to each $100 or portion of $100 of the total value declared. Now, under plaintiff's reading, they say the declared value charge does not apply to each $100, and it does not apply to the total value declared. Their interpretation is at direct odds with the contract's plain meaning. And another reason we know that we have to read the fee column this way is not only because, well, first let me start with the way declared value is treated everywhere else in the shipping contract, and we know we need to read terms in context of the contract as a whole. Now, everywhere else when the shipping contract uses the words declared value, declaration of value, declaring value, total declared value, it's always talking about the entire amount the shipper declares as value because under the terms, declared value means the dollar amount a shipper records in what's called a declared value field. And under the terms, declared value also means the dollar amount for which UPS becomes liable. So there's no question, for example, that to recover $500 for a lost or damaged package, a shipper has to declare value of the full $500. She cannot declare $400, for example, and expect a $500 check. Now, taking feud in context... Would she have to do that in order to get her $500 if you have already said to her, we have charged you already in your base rate for the first $100? No, and that's a very important question. To recover $500 under the UPS terms, Section 50.1 and 50.2, it's very clear that to increase UPS's default maximum liability, you have to declare a value, and then UPS's liability is increased up to the value declared. Now, under the CARMAC amendment, UPS has to come up with a reasonable amount that the shipment is worth, and that's the base rate. If you don't declare value above that rate, there's no additional charge. But once you do declare value above $100, then an additional charge applies. And this is where you look to calculate it. Once you declare value... Do you charge them twice? The base rate includes the up to $100 value, and the additional amount charges them again for the up to $100 value. No, the contract's disclosing that if there's no declared value or potentially declared value up to $100, no additional charge. But it says once you do declare value above $100, there is an additional charge, and it's based on the total value declared. But that's not my question. My question is, do you charge them under your analysis? It seems to me you would be charging them twice, in the base rate for the zero to $100, and then again in the hundred and a penny to $50,000. You would be charging them again for the same first $100. Well, that assumes that the $0.85 charge is perfectly calibrated to the risk of every $100 increment. I don't think we can assume that. You're the one charging it, so that's your job, not the consumer's job. If this may help alleviate the Court's concerns, this approach of charging for the entire value declared is very common. In fact, in the solo brief in UPS's motion to dismiss, on page ID 288, we cite an opinion from the STB, which is discussing an older opinion from the ICC. The agency tasked with interpreting Title 49 and the CARMEC Amendment, where the ICC specifically approved of this very same approach, limiting liability to a certain amount. But once a shipper goes over that amount, the declared value charge applies against the entire value declared, which includes that first increment. Counsel, what do you—this is an appeal from a 12b6 dismissal. The Court has to take the allegations in the complaint as true, so long as they're plausible. They allege that large shippers with auditors who monitor routinely shipping charges have called UPS on their charging for this first $0 to $100 range when total declared value exceeds that amount. And in response to demands for refunds, UPS has either routinely or often actually provided refunds in recognition that those charges were inappropriate. Those allegations would seem to support their contention that under this language, those charges for that first $0 to $100 should not be made. What's a court supposed to do with that allegation? Well, under Michigan law, when a court's looking at the terms of a contract, it has to enforce the terms, assuming they're unambiguous as they are written. And it's not appropriate to consider any extrinsic evidence, but to the extent you are curious or have questions, UPS, of course, disputes that allegation. It just doesn't happen. But for our purposes... But we're at 12b6. Correct. The concern is that is yours the only reasonable interpretation or might there be more than one? And it seems to me that where you have an allegation that at the 12b6 stage you must accept as true, that's the rule, when the plaintiff alleges that UPS has acknowledged that the charge was not proper and has routinely given these clients credit for that charge, how can that not show that UPS itself has acknowledged this to be a reasonable interpretation of the contractual language? Well, assuming as we must that we have to take these allegations as true, they still don't matter for purposes of this appeal because the court is limited to looking at the terms of the contract. And if they're clear... No, the court at this stage looks to the entirety of the complaint. That is what we are looking to in a 12b6 motion. And we must accept the entirety of the complaint as true. And all it has to be under Ashcroft, Iqbal, and Twombly is facially plausible. There's not even a law requirement that it be probable. So if I am to take that as true, if we are to take that as true, and it says UPS gets these calls and they say, we acknowledge that the charge was not proper and we will credit your account, how can we not presume at this spot, this 12b6 claim, that the plaintiff's interpretation of the contract is also reasonable at a minimum? Because those allegations are extrinsic evidence. And if you adopt UPS's position that the contract is clear and unambiguous, you can't consider the extrinsic evidence. I'm struggling with this because UPS doesn't get to take two positions in regards to the complaint. UPS is taking the argument position that there is only one way to interpret this fee chart. But UPS as an entity has officially taken the position, by their allegation it may not prove to be true, but has officially taken the position with people who complain that you are correct, we will refund the money. So I think we absolutely have to consider that UPS has already itself acknowledged that as a reasonable interpretation. That's not extrinsic. In the big vernacular, you'd call it an admission against interest. Well, it's extrinsic in the sense that it's relying on a source outside of the four corners of the contract to find an ambiguity. But counsel, it's not a matter of it relying on something outside of the contract. We're looking at the plaintiff's complaint, and that is an allegation in the complaint to support the position. And so because it is an allegation in the complaint, we have to look at that. And I don't disagree. Oh, I'm sorry, Judge. It sounded like you were continuing. No, no, I'm just saying that I think that in this case, you're mischaracterizing this as extrinsic when it is actually in the four corners of the plaintiff's complaint and listed as support for the plaintiff's allegations at the complaint stage. Well, it's still a fact in the complaint. It's nevertheless true that it's a fact that's outside the four corners of a contract. And Michigan courts are very clear. The language is clear. You enforce it as written without reliance on external sources. Even the party drafting the contract? Correct. Past practices, past interpretations, all true. You have to enforce the words as written. And if I may briefly turn to the other two claims. Please. As to Section 13708B, plaintiffs have characterized the claim at argument like this, that UPS has caused third-party retailers to present the guide. Even if you take that as true, the claim still fails because third-party retailers are not a motor carrier. Section 13708B targets persons who cause a motor carrier to present false or misleading information. And as to unjust enrichment, the claim is preempted because it does not fit within the Wollon's exception. The reason is because plaintiffs here have argued, have disclaimed any contractual agreement between UPS and the plaintiffs. Now, Wollon's addressed a routine breach of contract action between two parties. The action was to enforce the carrier's... You say they have disclaimed any contractual relationship. I mean, haven't they presented alternative arguments? In one version of the argument, they assert that there is a contractual relationship. In support of the other argument, the unjust enrichment claim, in order to develop that claim, they have to say there is no contractual relationship. But there's no reason that they can't make those kinds of alternative arguments, is there? Sure, sure. No, that's correct. But the way they framed the unjust enrichment claim works like this. Plaintiffs entered into a contract with a third-party retailer. The third-party retailer, in turn, entered into the shipping contract with UPS. And finally, they allege that UPS forced third-party retailers to impose this purportedly unfair charge. Now, plaintiffs could have brought a breach of contract claim against the third-party retailer, and the third-party retailer could have brought a breach of contract claim against UPS. But plaintiffs have to rely here on the enforcement of state law to imply a contract between plaintiffs and UPS to do equity. Neither Wollon's nor Ginsburg contemplated that extension. And it doesn't work, because plaintiffs inherently must rely on state law and policy as to what is just and equitable, and they seek to hold UPS liable for equitable remedies. All of that is based on sources external to the contract between UPS and the third-party retailers. Now, the Brown case relied on the same rationale to find that an unjust enrichment claim did not fit within the Wollon's exception. And plaintiffs tried to distinguish Brown on its facts and say Brown or the unjust enrichment claim in Brown sought to upend the carrier's fee schedule with its customers. But so too here would plaintiff's unjust enrichment claim upend, if not completely displace, Section 15 of UPS's contract with third-party retailers, where UPS disclaims promises to the customers of third-party retailers. So while plaintiffs may contend that they seek only to enforce the terms of the contract between UPS and third-party retailers, this is but one vivid example of how they indeed seek to override and certainly enlarge the terms of that contract. For the same reasons the unjust enrichment claim was preempted in Brown, it's preempted here. Thank you. Thank you very much. Thank you. Very briefly, Your Honors, my first point on rebuttal is simply that Ms. Blythe could not explain any rationale for why UPS gets to charge twice for the first $100 of value when you declare a value over $300 or over $100. I mean, we understand the $255 minimum as an administrative overhead fee. We have no problem with that. But you asked her, Judge Strach, she could not explain it. She could not. The only answer was to go back to an old STB pre-deregulation decision. And now that we're in the world of contract, they want to run away from the contract. What is your response to her argument on the unjust enrichment claim? Well, the first point that I didn't get to make in my initial presentation is that there is no UPS below never argued the ground that the District Court dismissed the unjust enrichment claim on in the alternative, that it was subject to express contract. Hasn't argued it here on appeal. Hasn't listed it on the issues. Has taken the position that there's no privity. Her argument, I think, that you're referring to, Judge Strach, is on the issue of preemption. And the Brown case was a very different case. That was a case where there was a fee charged and the baggage carriers at the airport were paid a per-bag fee. But they used to make more money by their tips. So the tips were barred once they put this per-bag fee in for the sky caps. Well, there was an unjust enrichment claim of some sort. It clearly was preempted. It wasn't anything like holding a party to its own promises, to its own voluntary undertakings, to use Justice Ginsburg's language from the Woolens case. We've tailored this case to hang directly on UPS's promises. So there's simply no comparison. That's factual or by action. By action, by causing this to be published through their third-party retailer network. Counsel, that concept of holding a party to their voluntary undertaking, that sounds like a contract claim. It doesn't sound like an unjust enrichment claim at all. Unjust enrichment is a little bit of a fuzzy concept in the law, Judge. It does encompass quantum merit and some implied contracts claims. Quantum merit, you're basically imposing an equitable remedy to do justice. It doesn't depend necessarily on the agreement between parties. But it can depend on a voluntary undertaking, absolutely. And that's what Justice Alito said in the Northwest Inc. v. Ginsburg case. He didn't just say, ah, it's a quantum merit claim, it's an implied contract claim, you're out. He expressly rejected that argument. And that's what we're relying on here. Finally, I'll just point out that my sister counsel referred to their brief below. In document number 17, page IDs 292-93, UPS relied on California law below. They argued California law below. Mr. Solow, Joe Solow, is from Manhattan Beach, California. Now, we did argue the case in front of CIVAC, and it was sort of bleeded over into Solow, that these general principles are the same. But certainly, I don't think they get to pick and choose when it comes to state contract law. They can't come here to this court and try to rely on the CLAP case and a narrow construction of Michigan law, and then we go back down and they're going to start arguing other state law. Or raise it in the affirmative defense category. Right. So I think they're trying to have their cake and eat it, too, and I think that's a problem. Thank you very much, Your Honors. Thank you both. Your Honor, if I may, just one last rebuttal point. Go ahead. Thank you very much. Your Honors, this is with regard to the Section 13708B claim, and the reason the case cannot proceed to discovery is because, as plaintiffs openly have argued, they seek discovery to learn if someone else caused UPS or another motor carrier to present the guide. They effectively concede, then, that they're looking for discovery in order to learn facts from which they can amend the complaint to state a viable claim. Procedurally, that's not an available avenue under Twombly and Iqbal and under analogous cases from this court, like the New Albany tractor case. Thank you. Thank you very much. We'll take the case under advisement. Thank you both for your arguments. You may call the next case.